STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Eric.Cheng@usdoj.gov
    Kyle.Waldinger@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> PETER KISANG KIM, <br><br> Defendant. | Case Nos.   21-CR-00438 BLF <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Sentencing Date: September 20, 2022 <br> Time: 9:00 a.m. <br> Judge: Hon. Beth Labson Freeman |

## I. INTRODUCTION

After a two-decade career at a high-tech industry stalwart, one engineer got a chance to assume new responsibilities at a young startup company in the same field, and he took it. On its own, this story of pursuing another challenge at a new employer would be an ordinary one in the Silicon Valley—one that often forms the lifeblood of innovation here and beyond.

In the case of Defendant Peter Kisang Kim, however, there was much more to this story. In the days before he left his longtime employer Broadcom, Kim secretly downloaded more than 500 sensitive files, which contained trade secrets about Broadcom's valuable technology and products, from the company's proprietary document repository systems. This was no innocent mistake, but rather an act of trade secret theft: Kim then knowingly kept the files in his possession on multiple computer devices as he went on to work for Company-1, a startup company seeking to develop products that would compete with Broadcom from the People's Republic of China (PRC). Kim even copied the sensitive files to his Company-1-issued work laptop and went on to repeatedly reference Broadcom's trade secrets for many months while working on his new job at Company-1, all in violation of the law—up until the day the FBI arrived at his doorstep with a search warrant and put an end to his criminal conduct.

Given a consideration of the Guidelines and the factors under 18 U.S.C. § 3553(a) as set out below, the government respectfully recommends that the Court sentence Kim to 15 months of custody (three months below the low-end of the Guidelines), followed by three years of supervised release, and order a $5,000 fine, $48,395 in restitution, and forfeiture of the items listed in the Court's Preliminary Order of Forfeiture entered on June 13, 2022. Dkt. No. 36. In particular, affording deterrence with a custodial sentence is paramount to protecting innovation against the criminal theft of trade secrets in the United States, particularly in a place like the Silicon Valley.

## II. BACKGROUND

### A. Factual Background

Broadcom Inc. ("Broadcom"), a company headquartered here in the Northern District of California with offices around the country and world, is a leading designer, developer, and supplier of a broad range of semiconductor and infrastructure software solutions. Presentence Investigation Report, Dkt. No. 38 ("PSR") ¶¶ 6–7. The company's product portfolio serves critical markets, such as

networking, broadband, wireless, storage, and industrial. *Id.* Broadcom's products, including integrated circuit (IC) chips, are used in equipment sold worldwide, including for enterprise and data center networking. *Id.*

Defendant Peter Kisang Kim was employed by Broadcom for over 20 years. PSR ¶ 11. His last role at the company was Principal Design Engineer with the design verification team in the Core Switch Group. *Id.* Kim had worked on various Broadcom products during his time at the company, including the Trident family of networking integrated circuit (IC) chips (such as the Trident 3 and the Trident 4) that are frequently used in high-volume data centers. Plea Agreement, Dkt. No. 29 ("Plea Agmt.") ¶ 2.

In July 2020, Kim abruptly resigned from Broadcom effective July 17, 2020. Plea Agmt. ¶ 2. In the days before he left Broadcom, Kim copied more than 500 sensitive Broadcom files from its document repository system and took possession of Broadcom trade secrets related to the Trident family of chips, including those contained in the following files:

(1) **Test plans** for the Trident family of chips, including with respect to top-level chip features, flexible port speed, ingress data buffer, top-level performance, and layer 2 features;

(2) **Design verification environment files** for the Trident family of chips, including with respect to scripts facilitating verification testing, compilation scripts, universal verification methodology, and memory interfacing; and

(3) **Design specifications** for the Trident family of chips, including with respect to top-level design and an interface sub-block (collectively, "Broadcom trade secrets"). PSR ¶¶ 12–15. As Kim later acknowledged, Broadcom took reasonable measures to keep the Broadcom trade secrets secret, including by storing the trade secrets on non-public document repositories in which the access permissions were restricted, requiring appropriate nondisclosure agreements to be executed before the trade secrets could be shared outside Broadcom, and in view of the confidentiality agreements Kim signed with Broadcom and the annual trainings he received, among other things. *Id.* Kim also acknowledged that the Broadcom trade secrets derived independent economic value from not being generally known and not readily ascertainable through proper means by another person. *Id.*

Less than two weeks following Kim's departure from Broadcom, on or about July 27, 2020, Kim began working as IC Design Verification Director for Company-1. PSR ¶¶ 14–16. Company-1, a

startup company based in the People's Republic of China (PRC), was seeking to become a leading chip designer focused on the PRC's domestic market for networking chips at the time.  PSR ¶¶ 8–10, 17.

On April 29, 2021, FBI agents executed a federal search warrant at Kim's residence, seizing multiple electronic devices.  Plea Agmt. ¶ 11.  Law enforcement's forensic review of the seized devices revealed that during Kim's employment at Company-1, he repeatedly accessed and referenced the Broadcom trade secrets on his personal electronic devices as well as his Company-1-issued Lenovo laptop, including on the following dates: August 14, 2020; August 19, 2020; August 29, 2020; September 18, 2020; October 15, 2020; November 12, 2020; January 15, 2021; March 26, 2021; and April 23, 2021; among other dates.  PSR ¶ 16.  Further, Kim looked at certain of the Broadcom trade secrets on his Company-1-issued Lenovo laptop while also working on various Company-1 materials, including Company-1 verification, test plan, and architecture documents, such as on January 15, 2021; March 26, 2021; and April 23, 2021.  PSR ¶ 17.

Kim admitted that he possessed the Broadcom trade secrets knowing that he took them from Broadcom.  Plea Agmt. ¶ 2.  In addition, having taken the Broadcom trade secrets for reference purposes, Kim knew that having them could advance the quality of his work as an employee for Company-1 and therefore economically benefit the company.  PSR ¶ 17.  Kim also knew that his actions could injure Broadcom, including because Company-1 was seeking to become a competitor to Broadcom by developing competing products abroad.  *Id.*

### B.      Procedural Background

The grand jury indicted Kim on eighteen counts of Theft of Trade Secrets in violation of 18 U.S.C. § 1832(a) on November 4, 2021.  Dkt. No. 1.  Following his initial appearance, Kim was released on a $500,000 bond.  Dkt. No. 4.

On May 10, 2022, Kim pleaded guilty to Counts Thirteen, Fourteen, and Fifteen of the Indictment pursuant to a plea agreement under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure.  Dkt. No. 29.  In his plea agreement, Kim stipulated that estimated losses to Broadcom associated with his theft of trade secrets totaled more than $250,000 in view of the costs of research and development of the Broadcom trade secrets.  Kim also agreed to pay restitution to victim Broadcom totaling $48,395 (based on estimates provided by Broadcom of costs incurred participating in the

investigation and prosecution of Kim's offenses, *see* 18 U.S.C. § 3663A(b)(4)).  PSR ¶ 18.

Sentencing is set for September 20, 2022.

### C. Victim Impact

Broadcom Inc. has submitted a Victim Impact Statements to the Court in this matter.  A representative from the company also requests to be heard at the sentencing hearing.

## III. DISCUSSION

### A. Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines.  *Id.*  After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991–93.  Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5) the need to provide restitution to any victims of the offense.

### B. Guidelines Calculation

The United States Probation Office ("Probation") accurately calculates the United States Sentencing Guidelines ("Guidelines") in the PSR, and it is consistent with the parties' plea agreement. PSR ¶¶ 26–37; Plea Agmt. ¶ 7.

The PSR correctly calculates the defendant's criminal history to be category I, as the defendant

has no prior criminal history.  PSR ¶¶ 39–44.

The PSR also correctly calculates the total offense level as 15.  PSR ¶ 37.  The base offense level is 6 under U.S.S.G. § 2B1.1(a)(2), and a twelve-level enhancement applies because the offense involved a loss of at least $250,000 but less than $500,000.  PSR ¶ 29.  This loss amount was calculated from time estimates provided by Broadcom for the work on the trade secrets highlighted in the Indictment multiplied by an engineer's salary at Broadcom.  *See* U.S.S.G. § 2B1.1 cmt. n.3(C)(ii) (providing that, in making a reasonable estimate of the loss, sentencing court may look to cost of developing trade secret information).  The government also agrees with the three-level reduction for acceptance of responsibility under § 3E1.1.  PSR ¶¶ 35–36.

Because the total offense level is 15 and the defendant's criminal history category is I, the sentencing range under the Guidelines is **18–24 months** of imprisonment.  PSR ¶ 66.

### C. JSIN Data

The Judiciary Sentencing Information (JSIN) platform shows that among offenders whose primary guideline was § 2B1.1 with an offense level of 15 and a Criminal History Category of I over the past five fiscal years (2017 to 2021), over two-thirds (68%) received a sentence of imprisonment.  PSR ¶ 84.  Of those who received a sentence of imprisonment, the average length of imprisonment imposed was 13 months and the median length of imprisonment was 12 months.  *Id.*[1]

---

[1] The defendant objects to inclusion of JSIN data in the PSR.  However, it is well established that district courts have broad discretion at sentencing to consider a wide range of information that could not otherwise be used or admissible in other settings.  *See* 18 U.S.C. § 3661; *Concepcion v. United States*, 142 S. Ct. 2389, 2398 (2022) ("Such discretion is bounded only when Congress or the Constitution expressly limits the type of information a district court may consider...."); *United States v. Tucker*, 404 U.S. 443, 446 (1972) ("[A] judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.").  The defendant has not articulated an express statutory or Constitutional basis on which this Court must exclude the JSIN data.  Insofar as the defendant attacks the persuasiveness or applicability of the data to his case, those claims go to the merits of the ultimate sentencing decision, not whether the JSIN data should be excluded from the PSR altogether.  Given that the JSIN data merely formalizes the Sentencing Commission's "longstanding practice of providing sentencing data at the request of federal judges by making some of the data provided through these special requests more broadly and easily available," there is no basis to exclude the data from the PSR.  *See* United States Sentencing Commission, What is the Judiciary Sentencing INformation (JSIN) platform?, available at https://www.ussc.gov/guidelines/judiciary-sentencing-information (last accessed Sept. 12, 2022).

Nevertheless, in order to conserve future judicial resources, the government respectfully requests that the Court make a specific finding at sentencing that the sentence it imposes, after correctly calculating the Guidelines range and considering the Section 3553(a) factors, would have been identical had the Court not reviewed or considered the JSIN data.  *See, e.g.*, *United States v. Ceja*, 23 F.4th 1218,

### D. Recommendation

The government recommends that the Court impose a sentence of 15 months of imprisonment (three months less than the low end of the Guidelines), followed by three years of supervised release, a $5,000 fine, and restitution, based upon a consideration of the Guidelines and 18 U.S.C. § 3553(a) factors. The seriousness of Kim's offenses, the need to promote respect for the law, and the need for deterrence warrant the imposition of a custodial sentence, factors that are also reflected by Probation's recommendation of a term of imprisonment. On the other hand, the government also considered in making its below-Guidelines recommendation that any sentence imposed must also take into account Kim's history and characteristics as reflected in the PSR and his letters of support, his lack of criminal history, as well as his early acceptance of responsibility for his crimes and the completed deposit of restitution to the Clerk's office.

First, the seriousness of the offense supports a custodial sentence of 15 months. After securing a new role with new responsibilities at Company-1 following two decades with his longtime employer Broadcom, Kim deliberately stole more than five hundred sensitive files from Broadcom's proprietary document repository systems. As described above, he knew that Company-1 was trying to compete with Broadcom from the PRC's overseas market, and that taking the trade secrets could make his work better and benefit his new employer while harming Broadcom. Despite all of this, he kept possession of the sensitive files containing the trade secrets while he worked for Company-1, copied the files to his Company-1-issued work laptop, and repeatedly referenced Broadcom's trade secrets while working on his new job at Company-1. Kim's serious offenses—far from a victimless crime and having a significant impact on Broadcom as reflected in its Victim Impact Statement—warrant the government's recommended sentence.

Second, the need to promote respect for the law and afford deterrence against trade secret theft crimes merit 15 months of imprisonment. Imposing a custodial sentence in cases like this one is

---

1227 (9th Cir. 2022) ("[E]ven assuming the district court erred, . . . the error was harmless because there is no possibility that the court's resolution of" defendant's "factual objection would have affected his sentence."); *United States v. Ali*, 620 F.3d 1062, 1074 (9th Cir. 2010) ("If there was any error, the error was harmless in that there is no evidence any of these alleged errors, if changed, would result in a shorter sentence for any of the Defendants.").

paramount to protecting innovation against the criminal theft of trade secrets in the United States, particularly in a place like the Silicon Valley.  As courts have often recognized, there is a great need for imposing a custodial sentence in cases involving white collar crimes to reflect the seriousness of the offense, promote respect for the law, and, importantly, provide deterrence to further and similar conduct.  *See, e.g.*, *United States v. Khan*, Case No. 12-CR-0860 YGR, 2014 WL 2930656, at *5 (N.D. Cal., June 27, 2014).  Indeed, "[a] non-custodial sentence would not achieve any of those goals" and "a non-custodial sentence would encourage, not deter, [defendant] and others similarly situated to proceed with financial crimes, reap the financial benefit, and then expect the proverbial slap-on-the-hand as punishment."  *Id.*; *cf. also United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment.  Yet the message of Martin's 7-day sentence is that would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty.").  Accordingly, this case warrants the 15-month custodial sentence recommended by the government in view of the need achieve general deterrence for others who may be tempted to steal trade secrets in this District.

   The government also agrees with Probation on a three-year term of supervised release for Kim, including the expanded suspicionless search condition agreed to by the parties and the other recommended conditions by Probation, as this is necessary to serve the interests of specific deterrence and rehabilitation given the nature of Kim's conduct involving the use of multiple electronic devices to illegally steal, possess, and reference a technology company's trade secrets.

//
//
//
//
//
//
//
//

## IV.     CONCLUSION

For the foregoing reasons, the United States respectfully recommends that the Court impose a custodial sentence of 15 months (three months below the low end of the Guidelines), followed by three years of supervised release with the expanded suspicionless search condition agreed to by the parties and other conditions recommended by Probation.  The Court should also order Kim to pay restitution to the victim Broadcom Inc. in the amount of $48,395,[2] a fine in the amount of $5,000, and a special assessment of $300, as well as the forfeiture of the items listed in the Court's Preliminary Order of Forfeiture entered on June 13, 2022.  Dkt. No. 36.

DATED:  September 13, 2022                                     Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney


           /s/           
ERIC CHENG
KYLE F. WALDINGER
Assistant United States Attorneys

---

[2] Kim has already deposited funds in the amount of $48,395 in the Court's registry, to be held by the Clerk to satisfy any restitution award ordered by the Court in the judgment.  The restitution address for Broadcom is as follows:
   Broadcom Inc.
   1320 Ridder Park Drive
   San Jose, California 95131
   Attn: Elizabeth Gonzales